IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00228-RN

**Tracy Willard Sykes,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Order**

Plaintiff Tracy Willard Sykes instituted this action on June 4, 2015, to challenge the denial of his application for social security income. Sykes claims that Administrative Law Judge Edward W. Seery erred in his determination by improperly evaluating Sykes's credibility, wrongly determining his residual functional capacity ("RFC"), and by failing to identify other jobs that Sykes is capable of performing. Both Sykes and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 22, 24.

After reviewing the parties' arguments, the court has determined that ALJ Seery reached the appropriate decision. In reaching his determination, ALJ Seery properly evaluated Sykes's credibility and his RFC. Additionally, the testimony of a Vocational Expert ("VE") to identify other work was not required at step eight. Therefore, the undersigned magistrate judge denies Sykes's Motion for Judgment on the Pleadings, grants Colvin's Motion for Judgment on the Pleadings, and affirms the Commissioner's decision.[1]

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 17.

## I. Background

On May 3, 2005, Sykes filed an application for disability benefits. In a determination dated July 11, 2005, Sykes was found disabled as of April 14, 2005. On November 3, 2011, the Social Security Administration found that Sykes was no longer disabled as of November 1, 2011. This determination was upheld upon reconsideration. Sykes appeared before ALJ Seery for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Seery determined that Sykes was not entitled to benefits because his previously-determined disability ended on November 1, 2011. Tr. at 12–20.

ALJ Seery found that, at the time of the previous decision,[2] Sykes had the following severe impairment: renal failure due to polycystic renal (kidney) disease. *Id*. at 14. This impairment met Listing 6.02A of the Listing of Impairments. *Id*. ALJ Seery also determined that, as of November 1, 2011, Sykes had the following severe impairments: kidney disease with a history of transplant and right shoulder problems. *Id*. ALJ Seery also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* He concluded that medical improvement in Sykes's condition occurred as of November 1, 2011. *Id.* at 15.

ALJ Seery then determined that Sykes had the RFC to perform a full range of light work. *Id*. ALJ Seery also concluded that Sykes was unable to perform his past work as a tow truck operator or an auto mechanic. *Id.* at 19. ALJ Seery found that, considering his age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that he was capable of performing as directed by Rule 202.18 of the Medical-Vocational Guidelines. *Id.* at 19. Thus, ALJ Seery found that Sykes was not disabled. *Id*. at 20.

---

[2] This is known as the comparison point decision ("CPD").

After unsuccessfully seeking review by the Appeals Council, Sykes commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on June 4, 2015. D.E. 8.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). In a typical social security case, where the issue is whether a claimant is disabled and should therefore be granted Social Security benefits in the first place, the Commissioner (through an ALJ) applies a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010). Once a claimant is found disabled under the Social Security Act, a presumption of continuing disability arises. *See Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted). The Secretary may not terminate benefits unless substantial evidence

3

demonstrates sufficient medical improvement in a claimant's impairment that the claimant becomes able to engage in substantial gainful activity. *See* 42 U.S.C. § 1382c(a)(4)(A); 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594, 416.994.

In assessing whether a claimant continues to be disabled, an ALJ must follow an eight-step sequential evaluation process for disability insurance benefits ("DIB") claims and a seven-step process for supplemental security income ("SSI") claims.[3]

(1) Is the claimant presently engaged in substantial gainful activity? If so, and any applicable trial work period has been completed, the claimant's disability ends. If not, proceed to step two.

(2) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step three.

(3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the CPD? If so, proceed to step four. If not, proceed to step five.

(4) Was any medical improvement related to the ability to work (i.e., has there been an increase in the claimant's residual functional capacity)? If so, proceed to step six. If not, proceed to step five.

(5) Is there an exception to medical improvement? If not, the claimant's disability continues. If an exception from the first group of exceptions to medical improvement applies (i.e., substantial evidence shows that the claimant has benefitted from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), see 20 C.F.R. §§ 404.1594(d) & 416.994(b) (3), proceed to step six. If an exception from the second group applies (i.e., disability determination was fraudulently obtained, claimant was uncooperative, unable to be found, or failed to follow prescribed treatment), see 20 C.F.R. §§ 404.1594(e) & 416.994(b)(4), the claimant's disability ends.

(6) Is the claimant's current combination of impairments severe? If so, proceed to step seven. If not, the claimant's disability ends.

---

[3] These evaluation processes are materially identical except for the first step, which applies to disability insurance benefits claims only.

(7) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant's disability ends. If not, proceed to step eight.

(8) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If so, the claimant's disability ends. If not, the claimant's disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(b)(5). Although the claimant retains the burden to prove disability, the Commissioner has the burden to produce evidence to meet or rebut the presumption of continuing disability. *Bellamy*, 755 F.2d at 1381 (citation omitted).

**C. Medical Background**

Sykes suffered from renal failure due to polycystic renal disease. His renal function, measured by elevated creatinine levels, was sufficiently elevated to require abdominal dialysis as of March 2004. Tr. at 257–62, 266–72. This condition was sufficiently severe to satisfy Listing 6.02A and, therefore, Sykes was found to be disabled for purposes of the Social Security Act. *Id.* at 14.

In January 2009, Sykes received a kidney transplant. *Id.* at 89–99. Although his own kidneys were not removed, the transplant returned his kidney functioning to within normal limits and he was able to stop dialysis treatment. *Id.*

Following surgery, Sykes was treated with monthly phlebotomies and he complained of bilateral inguinal hernias. *Id.* at 273–74. However, treatment records also note that he was feeling well. *Id.* He postponed hernia surgery to care for his ill wife. *Id.* His transplant was stable with immunosuppressants and his hypertension was well-controlled. *Id.* at 273–74, 292–93, 299–305.

Dr. Michael E. Woods, a state agency physician, conducted a continuing disability review ("CDR") on October 31, 2011. *Id.* at 311–20. He noted Sykes's medical condition had improved following transplant surgery. *Id.* Dr. Woods also remarked that Sykes no longer required

5

dialysis, that there were no signs of rejection of the transplanted kidney, and that lab testing indicated normal kidney functioning. *Id*. at 313–20. He opined that Sykes was capable of medium work with no additional limitations. *Id*. A second CDR by Dr. Pamela Jessup in May 2012 made a substantially similar RFC finding. *Id*. at 338–47.

Sykes underwent hernia repair surgery in November 2011. *Id*. at 275–76, 321–31. Following this surgery, he reported minimal pain. *Id*. at 382. A March 29, 2012 medical source statement by Dr. Edwin Fuller at the UNC Transplant Clinic noted that Sykes's condition was stable. *Id*. at 336. He observed that Sykes had been on dialysis from 2004 through 2009 when he received the kidney transplant. *Id*. He further remarked that Sykes had been treated post-transplant with an ACE inhibitor and that he required frequent phlebotomies, which had been reduced to monthly draws. *Id*. Dr. Fuller also noted that Sykes had hypertension and peripheral neuropathy but that his kidney function was stable. *Id*.

Sykes has continued to experience polycystic kidney disease. *Id*. at 348–52, 370–72. In April 2013, Sykes sought ER treatment for low back and flank pain due to enlarged cysts on his native kidneys, for which he received medication. *Id*. at 384–91, 401–02. He has also reported occasional hand numbness as well as shoulder pain, the latter of which was treated with steroid injections and physical therapy. *Id*. at 350, 363–69. A June 2013 MRI showed normal acromioclavicular joint, normal rotator cuff, and findings consistent with a posterior labral tear with an associated paravertebral cyst and partial thickness tear versus tendonitis of the distal right supraspinatus tendon. *Id*. at 359–62, 399–400. Additionally, an August 2013 follow-up noted some pain but full range of motion and full strength. *Id.* at 354–355, 357–58.

### D.  Credibility

Sykes first argues that ALJ Seery erred in his credibility determination by failing to credit Sykes's allegations of hand numbness, back pain, and shoulder pain. He contends that these conditions are supported by the medical evidence. He asserts that ALJ Seery failed to sufficiently explain the reasons for finding Sykes less than credible. The Commissioner maintains that ALJ Seery properly evaluated the evidence and sufficiently explained the reasons for his credibility finding. The undersigned concludes that ALJ Seery's credibility determination was proper.

The Social Security Regulations provide the authoritative standard for the evaluating subjective complaints of pain and symptomology. *See Craig v. Chater,* 76 F.3d 585, 593 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); SSR96–7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595–96. However,

neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96–7p, 1996 WL 374186, at *2.

A review of ALJ Seery's decision indicates that he fully considered all the evidence and cited the reasons for the credibility determination. ALJ Seery observed that Sykes's complaints were inconsistent with his reported activities of daily living and with the medical evidence. For instance, ALJ Seery noted that, following his kidney transplant, Sykes had no joint pain, abdominal pain, or diarrhea and he no longer required dialysis as his kidney functioning had returned to normal (tr. at 16); he did not complain of fever, nausea, or vomiting (*id*. at 17); although he complained of scattered aches and pains, he treatment consisted of steroid injections and physical therapy (*id*.); his complaints of lower back and flank pain, for which he sought emergency treatment, was stabilized with medication (*id*. at 18); and his hand shakiness was noted as occasional numbness and tremor in March 2012, but was not mentioned as a complaint in recent medical records (*id*.). Sykes also reported that he could perform most daily activities, including shopping, meal preparations, cleaning, laundry, driving, and that he mowed his lawn and went fishing. *Id*. at 30, 35, 49–51.

ALJ Seery considered all the evidence and his credibility determination is well-supported and is due deference. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) (noting that an ALJ's credibility determination is generally entitled to great deference). Sykes's successful transplant restored normal kidney function, he had largely normal exam findings, his pain was intermittent in nature, and he received conservative treatment. This all suggests Sykes is not as limited as he alleges. Instead, such evidence undermines his contention that his back, shoulder, and hand pain are so limiting so as to preclude all work activity.

Moreover, diagnosis alone is insufficient to establish disability. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... says nothing about the severity of the condition."). ALJ Seery recognized that Sykes had serious condition. Nonetheless, although Sykes has peripheral neuropathy and polycystic kidney disease, these alone, without associated limitations, are insufficient to establish that he is disabled.

Mindful that it is not the role of the reviewing court "to re-weigh conflicting evidence, make credibility determinations, or substitute ... [its] judgment for that of the Secretary[,]" *see Craig*, 76 F.3d at 589, and ALJ Seery's credibility findings having support in the record, Sykes's argument on this issue lacks merit. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (observing that an ALJ's credibility determination "should be accepted by the reviewing court absent exceptional circumstances.") (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)); *see also Meadows v. Astrue*, No. 5:11–cv–63, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (upholding ALJ's credibility determinations where they were neither unreasonable nor contradicted by other findings).

### E. Residual Functional Capacity

Sykes next avers that the RFC determination failed to include his chronic pain as a non-exertional limitation. The Commissioner responds to this argument by asserting that Sykes's pain was not as limiting as he alleged. The court agrees that substantial evidence supports ALJ Seery's conclusion that Sykes's pain allegations were not so limiting so as to preclude all substantial gainful activity.

An individual's RFC is defined as the capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* SSR 96–8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). Sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed by the ALJ and the ALJ also discusses claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7.

As noted above, ALJ Seery did not fully credit Sykes's complaints of back and shoulder pain, finding these conditions were not chronic and were treated conservatively. Moreover, these allegations are undermined by Sykes's statements to his providers that he was doing well and by generally normal exam findings, including a notation of full strength and full range of motion. *Id.* at 273–74, 292–93, 299–305, 354–55, 357–58, 378–81. Additionally, Sykes's hand issues were limited, having been reported as occasional numbness and tremors on only three occasions since 2011. *Id.* at 277–78, 378–81. As ALJ Seery determined, these limitations were not well-

supported in the record. Consequently, they were appropriately omitted from the RFC determination.

Moreover, ALJ Seery noted that two physicians opined that Sykes was capable of medium work. Tr. at 16–17. State agency physicians Drs. Woods and Jessup opined that Sykes was capable of medium work with no non-postural limitations. Although he ultimately found that Sykes was capable of work at a lower exertional level, these opinions constitute substantial evidence upon which to base a conclusion that Sykes is not precluded from all substantial gainful activity. They further support ALJ Seery's finding that Sykes is not as limited as he alleges. For these reasons, Sykes's argument on this issue lacks merit.

### F. Other Work

Finally, Sykes contends that ALJ Seery erred at step eight by failing to obtain VE testimony regarding the availability of other work available to him. The Commissioner maintains, and the court agrees, that ALJ Seery's reliance on the Grids at step eight was proper, given that Sykes had no non-exertional limitations.

At step eight, it is the Commissioner's burden to show that work the claimant is capable of performing is available. *Pass*, 65 F.3d at 1203 (citing *Hunter v. Sullivan*, 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines (Grids) or by calling a vocational expert to testify." *Aistrop v. Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566)). The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the

11

claimant can perform. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant: (1) suffers from a non-exertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook v. Chater*, 901 F. Supp. 971 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h). However, not every non-exertional limitation rises to the level of a non-exertional impairment and the latter will only be found where there is substantial evidence to support the finding that the non-exertional limitation affects an individual's residual capacity to perform work of which he is exertionally capable. *Walker*, 889 F.2d at 49; *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984). The Grids may still be relied upon to find a claimant is not disabled where non-exertional impairments, even severe ones, do not significantly reduce a claimant's occupational base. *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

  Here, ALJ Seery concluded that Sykes was capable of a full range of light work. Tr. at 15. Given the lack of additional non-exertional limitations in the RFC, ALJ Seery permissibly relied on the Medical-Vocational Guidelines ("Grids") to direct the disability determination. Based on Sykes's age, education, RFC, and work experience, Grid Rule 202.18 required ALJ Seery to determine Sykes was non-disabled. *Id*. at 19. ALJ Seery was not required to secure testimony from the VE as to other work available given that the Grids direct the disability conclusion in such instances. SSR 83-11. In the present case, given the absence of non-exertional limitations in Sykes's RFC determination, the Commissioner has satisfied her burden of

identifying work available by application of the Grids. Accordingly, Sykes's argument that VE testimony was required on this issue is without merit.

## III. Conclusion

For the forgoing reasons, the court denies Sykes's Motion for Judgment on the Pleadings (D.E. 22), grants Colvin's Motion for Judgment on the Pleadings (D.E. 24), and affirms the Commissioner's decision.

Dated: June 2, 2016.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE